IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TERRY ROBERT SHIREY, | ) | CASE NO. 5:25-cv-01016-BMB |
| | ) | |
| Plaintiff, | ) | JUDGE BRIDGET MEEHAN BRENNAN |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | REUBEN J. SHEPERD |
| FRANK BISIGNANO, | ) | |
| Commissioner of Social Security | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) | |

## I.    Introduction

Plaintiff, Terry Robert Shirey ("Shirey"), seeks judicial review of the final decision of the

Commissioner of Social Security, denying his application for Disability Insurance Benefits

("DIB") under Title II of the Social Security Act. This matter is before me pursuant to 42 U.S.C.

§§ 405(g), 1383(c)(3), and Local Rule 72.2(b). Because the Administrative Law Judge ("ALJ")

applied proper legal standards, I recommend that the Commissioner's final decision denying

Shirey's application for DIB be affirmed.

## II.    Procedural History

Shirey filed for DIB on September 29, 2022, alleging a disability onset date of July 1,

2018. (Tr. 215). The claims were denied initially and on reconsideration. (Tr. 101, 114). On

October 13, 2023, Shirey requested a hearing before an ALJ. (Tr. 130). Shirey, represented by

counsel, and a Vocational Expert ("VE") testified before an ALJ on April 4, 2024. (Tr. 51-72).

On April 24, 2024, the ALJ issued a written decision finding Shirey not disabled. (Tr. 8-22). The

Appeals Council denied Shirey's request for review on March 25, 2025, rendering the ALJ's

1

decision the final decision of the Commissioner. (Tr. 1-7). Shirey timely filed this action on May 19, 2025. (ECF Doc. 1).

### III.  Evidence

#### A.  Personal, Educational, and Vocational Evidence

Shirey was born January 31, 1969. (Tr. 294). He was 49 years old on the alleged onset date, making him a younger individual according to agency regulations. (Tr. 102). He has at least a high school education (Tr. 259), and he has past relevant work as a Finance Manager, DOT 186.167-086. (Tr. 21). His date last insured was December 31, 2023. (Tr. 14).

#### B.  Relevant Medical Evidence

On July 16, 2018, Shirey attended a medical appointment at the Veteran's Administration Medical Center ("VA") complaining of bilateral knee pain. (Tr. 567). Examination notes indicate he displayed an antalgic gait and bilateral knee crepitus. (*Id.*). X-rays performed that day showed mild right knee chondrocalcinosis and bilateral mild degenerative changes. (*Id.*). He was referred to physical therapy, and at an assessment on July 18, 2018, he indicated he was experiencing pain in his lower back, neck, bilateral shoulders, and his right knee. (Tr. 600). He had been prescribed Meloxicam for his knee and had been previously treated with a chiropractor. (*Id.*). He reported he was unable to perform his activities of daily living and had to sleep in a recliner due to his inability to lie flat in his bed. (*Id.*). His therapist reviewed a lumbar spine x-ray from July 6, 2018 which showed degenerative change; scoliosis with pelvic tilt, mild wedging of the last thoracic level, likely chronic; and right common iliac arterial ectasia. (*Id.*).

Shirey attended a pain management consultation on August 29, 2018, and stated that he has had low back pain "all his life" that was localized at his beltline. (Tr. 576). The pain sometimes radiated bilaterally to his groin and the area on the outside of his hips was numb.

(*Id.*). He also reported a recent onset of left arm pain with the feeling of pins and needles, as well as neck pain. (*Id.*). Examination notes indicate normal imaging with minimal degenerative changes in the cervical and lumbar spine. (Tr. 577). He displayed a "grossly normal, non-antalgic" gait, with minimal pain behaviors, 5/5 lower and upper extremity strength with minimal limitation in his spinal range of motion and mild tenderness on palpation. (Tr. 702-03).

An examination of Shirey's knees on February 25, 2019 revealed a non-antalgic gait, with negative knee crepitus, bilateral anterior drawer test, McMurry's test/ posterior drawer test and valgus and varus stress tests. (Tr. 558). On March 12, 2019, Shirey underwent bilateral shoulder x-rays, which were normal. (Tr. 666-67). Examination notes from that same day indicated 5/5 strength, tenderness of palpation of bilateral posterior shoulders and decreased range of motion of bilateral shoulders due to pain. (Tr. 554). On March 25, 2019, he had an electromyography test ("EMG") to address numbness, tingling, and pain in his left arm, hand, posterior left shoulder, and right shoulder. (Tr. 548). The EMG revealed mild right and moderate left carpal tunnel syndrome. (Tr. 538). He also had an MRI on April 11, 2019, which revealed minimal narrowing of the glenohumeral articular cartilage, with no evidence of rotator cuff or labral abnormality. (Tr. 537). An examination of his shoulders on April 17, 2019, Shirey had positive Phalen and Tinel tests , and his range of motion was limited by pain. (Tr. 538).
A thoracic spine x-ray on May 6, 2019, showed mild disc space narrowing, and a scoliosis evaluation indicated minimal scoliosis at the thoracolumbar junction convex toward the left. (Tr. 665). A May 29, 2019 cervical spine MRI showed a small central disc bulge at C3-C4 and C5-6, a small central disc bulge causing mild central compromise at C4-C5, and a small central and left paracentral disc bulge and focal annular tear at C6-C7. (Tr. 535). There were osteophytes at uncovertebral joints causing mild left neural foramen compromise at C6-C7. (*Id.*). Shirey treated

his shoulders with a chiropractor beginning on June 5, 2019, and at a VA office visit on July 31, 2019, Shirey reported he has had the feeling of pins and needles in the area of the shoulder medial to both shoulder blades for more than 20 years. (Tr. 516). He reported some numbness in his hands, and was assessed with bilateral shoulder pain, possibly rotator cuff tendinitis, and median nerve neuritis. (*Id.*).

A primary care progress note dated March 9, 2020 indicated a medical history that included arthritis of shoulder region joint; alcohol abuse; shoulder pain (right injection 2/2018); rotator cuff impingement syndrome; bilateral carpal tunnel syndrome; paresthesia of upper limb; tobacco use; vitamin D deficiency; patellofemoral stress syndrome; osteoarthritis of knee; hypertension; knee pain; and low back pain. (Tr. 498). Bilateral knee x-rays from July 31, 2020, showed mild joint space narrowing and chondrocalcinosis. (Tr. 492). A physical therapy assessment on August 20, 2020, noted that Shirey "finds himself constantly decreasing weightbearing through the left lower extremity due to habitual tendencies," and documented continued, although improved, numbness in the left lower extremity, with pain at 2/10 in his lumbar spine and right knee, and at 6/10 in the left lower extremity when numb. (Tr. 487). He was discharged from physical therapy after five visits, with a note indicating that he complained of his right knee giving way as he overcompensates for his left lower extremity numbness, although he had some improvement in the left lower extremity. (Tr. 477).

On May 20, 2021, Shirey attended a physical therapy consultation, where he complained again of lower left extremity numbness and giving way, and right knee pain. (Tr. 378). He reported no issues with sitting and indicated that he felt his lower back pain and right knee pain were exacerbated by the problems in his left leg. (*Id.*). At a return to clinic visit on July 28, 2021, Shirey reported bilateral arm and shoulder pain, with numbness and tingling. (Tr. 417). He

4

further reported increasing numbness and tingling in his left lower extremity and increasing tinnitus. (*Id.*). A lumbar spine x-ray taken that day revealed mild diffuse degenerative changes and showed moderate to severe atherosclerotic calcification of the aortoiliac system. (Tr. 333). A physical therapy consultation on August 16, 2021, documented lower back pain with left lower extremity numbness and giving way and right knee pain. (Tr. 462). All signs and symptoms correlated with imaging indicating a vascular concern. (*Id.*).

At a September 28, 2021 office visit, Shirey reported paresthesia for two to three months in his left lower extremity, with pain in his groin, buttock, and calf. (Tr. 677). At a physical therapy consultation that same day he had good range of motion, negative straight leg testing, intact sensation to light touch and 5/5 strength in the left lower extremity with tenderness over the area of the left piriformis with taut band noted, and Faber was with increased back pain. (Tr. 363). The pain was worsened by standing beyond 15 minutes but was improved with sitting or walking. (*Id.*). He had discontinued use of Meloxicam but continued to use diclofenac topicals. (*Id.*). He attended a physical therapy consultation on October 20, 2021, for left gluteal and lower back pain. (Tr. 362). There, Shirey reported pain throughout the left posterior hip with numbness in his left foot. (*Id.*). He had positive Thomas and FABER tests but reported improvement in his right knee with the use of a brace. (*Id.*). He reported that he had to sleep in a recliner because his lower back pain prevented him from laying flat. (*Id.*).

On January 12, 2022, Shirey was again discharged from physical therapy, noting he was now wearing braces on both knees. (Tr. 813). His lower back pain now limited him to five minutes standing or walking and was preventing him from participating in activities of daily living or recreational activities. (*Id.*). He had 5/5 strength, decreased low back range of motion, strong bilateral great toe raise against resistance and non-antalgic gait. (Tr. 393).The physical

5

therapist recommended that he continue with therapy along with a home exercise program. (*Id.*). A lumbar spine MRI on February 1, 2022 showed mild lumbar levoscoliosis and disc degeneration, with disc bulge and facet degeneration at L1-L2, L2-L3, L3-L4, and L4-5; mild central canal compromise from degenerative changes at L3-L4 and L4-L5; mild to moderate bilateral neural foramen compromise from bulging discs and osteophytes at L1-L2; mild right neural foramen compromise from bulging disc and osteophyte at L2-L3; mild bilateral neural foramen compromise from bulging disc at L3-L4; and mild right and mild to moderate left neural foramen compromise from bulging disc and osteophyte at L4-L5. (Tr. 331).

At an office visit on February 6, 2023, Shirey reported his knee pain was stable while wearing his braces. (Tr. 732). He again attended a physical therapy consultation on August 7, 2023, where he was fitted for a brace to treat left elbow lateral epicondylitis. (Tr. 761). An examination note from September 3, 2024 indicated he continued to treat his bilateral knee pain with Meloxicam and diclofenac gel. (Tr. 45).

### C.        Medical Opinion Evidence

#### 1.  State Agency Reviewing Opinion Evidence

On January 5, 2023, state agency reviewing physician Steve McKee, M.D., adopted the prior ALJ decision date April 13, 2020, that found that Shirey was capable of performing light work except that he could never climb ladders, ropes or scaffolds but could occasionally climb ramps or stairs. He could frequently balance and crouch, but only occasionally stoop, kneel or crawl. He could occasionally reach overhead bilaterally. He could frequently handle and finger bilaterally. He must avoid workplace hazards, such as unprotected heights or exposure to dangerous moving machinery. (Tr. 80, 104-05). On March 16, 2023, state agency reviewing physician Mehr Siddiqui, M.D., adopted the same RFC except that he found that Shirey was

capable of frequent kneeling and crouching. (Tr. 110-12). On September 5, 2023, state agency reviewing psychologist Jennifer Swain, Psy.D., found that Shirey had no medically determinable mental health impairments. (Tr. 109).

### 2. Consultative Examination

On August 15, 2023, John S. Reece, Psy.D., performed a mental health consultative examination. (Tr. 766-73). Dr. Reece noted that Shirey had no history of mental health treatment, but that he reported poor sleep, low energy, and that he was easily angered or irritated. (Tr. 768). Dr. Reece opined that Shirey had no mental health limitations affecting his ability to work. (Tr. 771).

### D. Administrative Hearing Evidence

On April 4, 2024, Shirey testified before the ALJ that he was 55 years old with a high school education, and that he had not worked since 2018. (Tr. 58). He indicated he was unable to work because he was not capable of sitting in an office for the 13 to 14 hours daily that his prior work required. (Tr. 59). His low back pain has impacted his ability to sit for some time, but it has grown worse. (*Id.*). It started during his military service and at times limited his ability to walk at all. (Tr. 59-60). He has done physical therapy and continues to do the exercises he learned and takes anti-inflammatory medications, but those does not provide real relief. (Tr. 60). His back pain flares up, often without any significant activity. (*Id.*).

Shirey further testified that is incapable of turning his neck "as fully as most people," and that his neck bothers him "quite a bit most days." (*Id.*). He indicated that his knees are "shot" and that wearing braces has not helped them. (*Id.*). His left shoulder bothers him and makes it hard to grab things out of cabinets. (*Id.*). His carpal tunnel syndrome causes his fingers to go numb, and affects his ability to open jars or button a shirt. (Tr. 61).

Shirey testified that he does not move quickly when he walks, and he uses a cane to prevent falls like he has had in the past. (*Id.*). He can stand for a few minutes at a time, and sit for a limited amount of time, although he can sit longer if he elevates his feet in his recliner. (Tr. 61-62). He is unable to determine if he could lift eight to ten pounds because it has been a long time since he tried to do so. (Tr. 62). He does not go up and down stairs and he has to sleep in a recliner because he cannot lie flat, which leads to poor sleep. (Tr. 62-63). His girlfriend does most of the household chores, and her father has to do their yard work for them. (Tr. 63). Shirey can only drive short distances, and he will accompany his girlfriend's mother to do their grocery shopping. (Tr. 63-64). Under questioning from his attorney, Shirey testified that lately he has been having more bad days. (Tr. 64) His pain interferes with his concentration. (Tr. 64).

After Shirey completed his testimony, VE Thomas Nimberger testified that Shirey's past relevant work was as a finance manager, DOT 186.167-086, with an SVP of 8, both generally and actually performed at the sedentary level. (Tr. 66). For his first hypothetical, the ALJ asked the VE to consider an individual of the same age, education, and work experience as Shirey who is limited to the performance of sedentary work. (Tr. 66-67). The individual is unable to climb ladders, ropes, or scaffolds, but could occasionally climb ramps or stairs; the individual could occasionally balance, stoop, kneel, crouch, or crawl; the individual could occasionally reach overhead bilaterally; the individual is limited to frequent bilateral handling and fingering; and the individual must avoid all exposure to hazards such as unprotected heights and dangerous moving machinery. (Tr. 67). The VE opined that this individual was capable of performing Shirey's past work as a finance manager, both as it was generally performed and as he performed it. (*Id.*).

For his second hypothetical, the ALJ asked the VE to consider the same individual from the first hypothetical, but with the additional limitation that the individual must be allowed to use

a cane for walking at the job site. (*Id.*). The VE opined that this individual could also perform the finance manager job, both as generally and actually performed. (*Id.*). The VE testified that his opinion would be the same if the individual would be further limited to requiring the cane for standing, walking, and balancing. (Tr. 68).

For a third hypothetical, the ALJ asked the VE to again consider the same individual, but with the additional limitation that the individual must be allowed to alternate between sitting and standing at will provided that the person does not leave the workstation and is not off task more than 10 percent of the workday. (*Id.*). The VE again opined that this individual could perform the finance manager job both as generally and actually performed. (*Id.*). For a final hypothetical, the ALJ limited the same individual to occasional handling and fingering. (Tr. 69). The VE opined that this individual would be unable to work as a finance manager (*Id.*).

## IV.  The ALJ's Decision

In his decision dated March 14, 2024, the ALJ made the following findings:

1.  The claimant last met the insured status requirements of the Social Security Act on December 31, 2023.

2.  The claimant did not engage in substantial gainful activity during the period from his alleged onset date of July 1, 2018 through his date last insured of December 31, 2023 (20 CFR 404.1571 *et seq.*).

3.  Through the date last insured, the claimant had the following severe impairments: degenerative joint disease of the knees, degenerative disc disease of the cervical spine, degenerative disc disease of the lumbar spine (1F/23), carpal tunnel syndrome, degenerative joint disease of the left shoulder, obesity (20 C.F.R 404.1520(c)).

4.  Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.  After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional

9

capacity to perform sedentary work as defined in 20 CFR 404.1567 (a) except the claimant must be allowed to use a cane when walking at the job site. The claimant is unable to climb ladders, ropes or scaffolds. He can occasionally climb ramps and stairs. The claimant can occasionally balance, stoop, kneel, crouch and crawl. He is restricted to occasional overhead reaching bilaterally. The claimant is limited to frequent bilateral handling and fingering. The claimant must avoid all exposure to hazards such as unprotected heights and dangerous moving machinery.

6. Through the date last insured, the claimant was capable of performing past relevant work as a finance manager, 186.167-086, Sedentary per DOT and as performed, SVP 8. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity. (20 CFR 404.1565).

7. The claimant has no past relevant work (20 CFR 416.965).

8. The claimant was not under a disability, as defined in the Social Security Act, at any time from July 1, 2018, the alleged onset date, through December 31, 2023, the date last insured (20 CFR 404.1520(f)).

(Tr. 19-43).

## V. Law and Analysis

### A. Standard for Disability

Social Security regulations outline a five-step process the ALJ must use to determine

whether a claimant is entitled to benefits:

1. whether the claimant is engaged in substantial gainful activity;

2. if not, whether the claimant has a severe impairment or combination of impairments;

3. if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. Part 404, Subpart P, Appendix 1;

4. if not, whether the claimant can perform their past relevant work in light of his RFC; and

5. if not, whether, based on the claimant's age, education, and work experience, they can perform other work found in the national economy.

20 C.F.R. § 404.1520(a)(4)(i)-(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642-43 (6th Cir. 2006). The Commissioner is obligated to produce evidence at Step Five, but the claimant bears the ultimate burden to produce sufficient evidence to prove they are disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a).

B.      Standard of Review

This Court reviews the Commissioner's final decision to determine whether it is supported by substantial evidence and whether proper legal standards were applied. 42 U.S.C. § 405(g); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is "'more than a scintilla of evidence but less than a preponderance.'" *Napier v. Comm'r of Soc. Sec.*, 127 F.4th 1000, 1004 (6th Cir. 2025) quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). It means "'relevant evidence . . . a reasonable mind might accept as adequate to support a conclusion.'" *Id.*, quoting *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). Even when an ALJ's decision is supported by substantial evidence, the Commissioner's decision cannot be overturned "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

Under this standard, the court cannot decide the facts anew, evaluate credibility, or re-weigh the evidence. *Id.* at 476. And "it is not necessary that this court agree with the Commissioner's finding," so long as it meets the substantial evidence standard. *Rogers*, 486 F.3d at 241; *see also Biestek*, 880 F.3d at 783. This is so because the Commissioner enjoys a "zone of choice" within which to decide cases without court interference. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

Even if substantial evidence supported the ALJ's decision, the court will not uphold that decision when the Commissioner failed to apply proper legal standards, unless the legal error

11

was harmless. *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("[A] decision . . . will not be upheld [when] the SSA fails to follow its own regulations and that error prejudices a claimant on the merits or deprives the claimant of a substantial right."); *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 654 (6th Cir. 2009) ("Generally, . . . we review decisions of administrative agencies for harmless error."). Nor will this Court uphold a decision when the Commissioner's reasoning does "not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011). Requiring an accurate and logical bridge ensures that a claimant and the reviewing court will understand the ALJ's reasoning, because "[i]f relevant evidence is not mentioned, the court cannot determine if it was discounted or merely overlooked." *Shrader v. Astrue*, No. 11-13000, 2012 WL 5383120, at *6 (E.D. Mich. Nov. 1, 2012).

## VI.    Discussion

Shirey raises three issues for this Court's review, arguing that:

1.     The ALJ erred when he failed to properly apply the criteria of SSR 96-8p and consider all Shirey's impairments and related limitations when forming the residual functional capacity evaluation.

2.     At Step Four of the sequential evaluation, the ALJ's finding that Shirey could perform his past relevant work as a finance manager was not supported by substantial evidence.

The ALJ committed harmful error when he failed to properly apply the criteria of SSR 16-3p and failed to find that the intensity, persistence and limiting effects of plaintiff's symptoms, including pain, precluded him from performing his past relevant work and/or engaging in substantial gainful activity on a full-time and sustained basis.

(ECF Doc. 8, p. 1). As the arguments Shirey raised in his first and third arguments are closely aligned, I will address those issues jointly.

### A.    The ALJ properly evaluated Shirey's impairments and subjective complaints, and supported the RFC with substantial evidence.

12

Shirey argues that Social Security Ruling 96-8p requires the ALJ to consider the limitations and restrictions imposed by all of his severe and non-severe impairments as shown by relevant evidence, including medical history, medical signs, laboratory findings, and statements about how symptoms affected him. (*Id.* at p. 8). Shirey contends that the ALJ failed to include any limitations in the RFC relating to his complaints of intermittent numbness and tingling, or his complaints concerning difficulty reaching and "grabbing things out of the cabinet." (*Id.* at p. 9). Without consideration of these complaints, Shirey asserts that, contrary to SSR 96-8p, the ALJ failed to consider the totality of Shirey's symptoms when forming the RFC and thus failed to support the RFC with substantial evidence. (*Id.*).

Shirely further argues that the ALJ did not follow the mandates of SSR 16-3p in evaluating his symptoms. (*Id.* at p. 11). Shirey claims that the ALJ erroneously found that his "statements were not entirely consistent with his allegations" and did not provide evidence that supported this finding. (*Id.* at pp. 13-14). In Shirey's view, the ALJ failed to properly account for his pain arising from musculoskeletal problems when formulating the RFC. (*Id.* at p. 14).

The Commissioner responds by arguing that substantial evidence supports the ALJ's evaluation of Shirey's symptoms. (ECF Doc. 11, p. 4). The Commissioner notes Shirey raises two specific claims in his brief, first that the RFC did not include limitations pertaining to numbness and tingling in his arms and hands, and, second, that the ALJ did not properly account for Shirey's subjective complaints, including pain. (*Id.* at p. 5). The ALJ's evaluation, however, referenced those concerns and each was addressed properly. (*Id.* at pp. 5-6). Further, the ALJ adopted an RFC more restrictive than those suggested by the state agency reviewing physicians, the only medical source opinions, and therefore any perceived errors in the ALJ's evaluation accrued to Shirey's benefit. (*Id.* at p. 6). Finally, the Commissioner maintains that the ALJ

considered the factors required by SSR 16-3p in evaluating Shirey's subjective complaints, and in so doing, provided the requisite substantial evidence to sustain his opinion. (*Id.* at p. 7).

SSR 16-3p defines a two-step process in evaluating an individual's symptoms. First, it must be determined whether the individual has a medically determinable physical or mental impairment that could reasonably be expected to produce the individual's alleged symptoms. SSR 16-3p, 82 Fed. Red. 49462, 46463; *Simon v. Comm'r of Soc. Sec.*, 5:23-cv-0013, 2024 WL 4025780 at *11 (N.D. Ohio Sept. 3, 2024). If that requirement is met, the second step is to evaluate the intensity and persistence of the claimant's symptoms to determine the extent to which they limit the claimant's ability to perform work-related activities. (*Id.*). In the present case there is no dispute that the ALJ identified several severe physical impairments, thereby meeting the first step of the analysis. (Tr. 14). Accordingly, the discussion here will focus on the ALJ's compliance with the second step.

In undertaking this analysis, an ALJ should consider objective medical evidence, a claimant's subjective complaints, information about a claimant's prior work record, and information from medical and non-medical sources. SSR 16-3p; 20 C.F.R. 404.1529(c)(3). Factors relevant to a claimant's symptoms include daily activities, types and effectiveness of medications, treatment received to address symptoms, and other factors concerning a claimant's functional limitations and restrictions due to pain or other symptoms. *Id.*

SSR 96-8p further advises that an ALJ's RFC analysis should discuss "why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." SSR 96-8p, *Assessing Residual Functional Capacity in Initial Claims*, 61 Fed. Reg. 34474, 34478 (July 2, 1996). Specifically:

In all cases in which symptoms, such as pain, are alleged, the RFC assessment must:

14

- Contain a thorough discussion and analysis of the objective medical and other evidence, including the individual's complaints of pain and other symptoms and the adjudicator's personal observations, if appropriate;

- Include a resolution of any inconsistencies in the evidence as a whole; and

- Set forth a logical explanation of the effects of the symptoms, including pain, on the individual's ability to work.

SSR 96-8p.

Shirey first argues that the ALJ failed to account for his intermittent numbness and tingling in his lower extremities, or his difficulty in reaching or grabbing things from a cabinet, when formulating the RFC. (ECF Doc. 8, p. 9). He then argues that the ALJ "failed to find that the intensity, persistence and limiting effects of [his] symptoms, including pain, precluding him from performing his part (sic) relevant work and/or engaging in substantial gainful activity on a full-time and sustained basis." (*Id.*, at. p. 11). These arguments should rightfully have been addressed as a single issue, as numbness, tingling, and difficulty reaching are symptoms and subjective complaints that should be included in the SSR 16-3p analysis, rather than impairments. I further note, that the RFC clearly and specifically accounted for these symptoms, as the RFC restricted Shirey to the sedentary exertional level, with limitations to requiring the use of a cane while walking at the job site; occasional climbing of ramps and stairs; no climbing of ladders, ropes, and scaffolds; occasional balancing, stooping, kneeling, crouching, and crawling; occasional overhead reaching; frequent bilateral handling and fingering; and avoiding all exposure to hazards such as unprotected heights and dangerous, moving machinery. (Tr. 15-16).

At step two of the SSR 16-3p analysis, the ALJ wrote that "the claimant's statements concerning the intensity, persistence and limiting effects of those symptoms are not entirely consistent with the medical evidence and other evidence in the record". (Tr. 17). In arriving at

15

this conclusion, the ALJ considered several of the factors delineated in SSR 16-3p. First, the ALJ gave consideration to Shirey's activities of daily living. At various points in the decision the ALJ articulated that Shirey sleeps in a recliner due to upper and lower back pain (*id.*), that his daily routine includes making his wife lunch, reading the newspaper, using the computer, and socializing with his in-laws (*id.*), that he does not drive or mow his yard (Tr. 19), and that his girlfriend does most of the household chores, though he will go shopping with his mother-in-law (Tr. 20). These factors contributed to the determination that Shirey was limited to work at the sedentary exertional level with additional limitations. (Tr. 17).

The ALJ also considered the treatment and medication Shirey received to address his impairments, and the degree of effectiveness of this care. The ALJ noted that Shirey has received generally conservative treatment, which includes physical therapy for his pain and anti-inflammatory medications. (Tr. 17). The ALJ acknowledged that there was reference to use of a cane in the record, a restriction he accommodated in the RFC. (*Id.*). The ALJ further noted office visits in February and August of 2023 where Shirey has indicated his knee pain is stable when wearing a brace and that he was using diclofenac gel and Meloxicam for pain, and examination notes have indicated that his gait was non-ataxic. (*Id.*). Shirey was also using bilateral wrist splints to treat his carpal tunnel syndrome. (Tr. 18). In January 2021, Shirey reported improvement in back pain with a brace. (Tr. 19). He also restarted physical therapy in August 2021. (*Id.*). Shirey noted that his right lower extremity weakness had improved since he received a knee brace. (*Id.*).

The ALJ further provided thorough discussion of the objective medical evidence. Specifically, the ALJ referenced lumbar and cervical spine x-rays from 2018, as well as bilateral knee and left shoulder x-rays, all of which revealed relatively mild findings. (Tr. 17). He also

noted an August 2018 examination which noted his "grossly normal, non-antalgic" gait, with minimal pain behaviors, 5/5 lower and upper extremity strength, with minimal limitation in his spinal range of motion and mild tenderness on palpation. (Tr. 18). A knee exam in February 2019 noted non-antalgic gait; negative knee crepitus, bilateral anterior drawer test, McMurry's test, posterior drawer test, valgus and varus stress tests were all negative, sensation was intact to light touch; and 5/5 motor strength in all groups of the bilateral lower extremities. (*Id.*). A shoulder exam from March 2019 noted 5/5 strength, tenderness of palpation of bilateral posterior shoulders, decreased range of motion of bilateral shoulders due to pain. (*Id.*). An EMG/NCS in March 2019 showed mild right and moderate left carpal tunnel syndrome. (*Id.*).

The ALJ discussed an MRI of the left shoulder in April 2019 with minimal findings, and an MRI of the neck in 2019 that showed mostly mild findings. (*Id.*). At an office visit in April 2019, Shirey had positive Phalen and Tinel tests, and his shoulder range of motion was restricted by pain. (*Id.*). There was a positive impingement test, painful arc, negative Hawkin's test and Speed test, and cross arm negative test. (*Id.*). An x-ray from July 2020 revealed only mild findings. (Tr. 19).

The ALJ further wrote of a lumbar x-ray from July 2021 showing mild orthopedic findings. (*Id.*). Examination notes from a September 2021 office visit indicated good range of motion, negative straight leg raise, intact sensation to light touch and 5/5 strength in the left lower extremity with tenderness over the area of the left hip piriformis with taut band noted, and Faber was with increased back pain. (*Id.*). In January 2022 he had 5/5 strength, decreased low back range of motion, strong bilateral great toe raise against resistance and non-antalgic gait. (*Id.*). A lumbar spine MRI on February 1, 2022 showed mild to moderate findings. (*Id.*). This discussion of the objective medical findings in the ALJ decision provided substantial evidence

17

that serves as the basis for his determination of Shirey's RFC, consistent with the mandate SSR 96-8p.

Overall, the ALJ clearly considered the relevant factors concerning his subjective complaints when determining Shirey's RFC. The ALJ included limitations in the RFC addressing each of Shirey's medically determinable impairments, and accommodated the symptoms of numbness and tingling of the lower extremities and difficulty reaching that Shirey suggested were ignored. The ALJ clearly considered the relevant factors under SSR 16-3p when assessing Shirey's subjective complaints and accordingly limited him to a sedentary exertional level with significant additional restrictions. Finally, the ALJ provided ample discussion of the objective medical evidence to allow a subsequent reviewer to understand how he determined the RFC, as required under SSR 96-8p. As the ALJ properly evaluated Shirey's subjective complaints, I cannot recommend remand on this basis.

**B.      The ALJ's determination that Shirey was capable of performing his past relevant work was not invalidated by SSR 24-2p.**

In his second assignment of error, Shirey argues that the ALJ erred when he found at Step Four of the sequential evaluation that Shirey was capable of performing his past work as a finance manager, (ECF Doc. 8, at pp. 10-11). He contends that the past relevant work was performed too long ago to qualify as past relevant work under new SSR 24-2p, which allows for a five-year look-back period for past relevant work. (*Id.* at p. 11). The Commissioner responds that this argument is without merit because SSR 24-2p did not take effect until June 22, 2024, after the April 24, 2024 date of the ALJ's decision. (ECF Doc. 11, p. 8). Therefore, the ALJ correctly applied the 15-year look-back period defined in SSR 82-62, the ruling that was still in effect at the time of the ALJ's decision. (*Id.*).

18

SSR 24-2p, adopted in June 2024, revises the Social Security Administration's definition of "past relevant work" to include only "work done within the past 5 years." SSR 24-2p; *How We Evaluate Past Relevant Work*, 89 F. Reg. 48479, 48480 (June 6, 2024). Citing to SSR 24-2p, Shirey argues that since he had not worked since 2018, the ALJ erred in finding he was capable on April 24, 2024, the date of the decision, of performing past relevant work that was last performed more than five years prior. (ECF Doc. 8, p. 11, citing Tr. 58). I note, however, that SSR 24-2p only applies to new applications filed on or after June 22, 2024, and to any claims pending on or after June 22, 2024. *See* 89 F. Reg. 48479, n. 1. Since Shirey's claims were not pending on June 22, 2024, the terms of SSR 24-2p do not apply here, and this argument fails.

In his reply brief, Shirey argues that because the Appeals Council did not make a determination in this case until March 25, 2025, the case was still "pending" before the Social Security Administration on June 22, 2024. (ECF Doc. 12, p. 1). Shirey cites no legal authority to suggest that a case still awaiting Appeals Council review would meet the definition of "pending." I note, however, there is a recent decision in this District that found the opposite. *See Beal v. Comm'r of Soc. Sec.,* No. 4:25-CV-00647, 2026 WL 318985 (N.D. Ohio February 6, 2026). That case involved a similarly situated plaintiff where the unfavorable ALJ decision was issued on March 6, 2024, and where the Appeals Council denied her request for review on February 4, 2025. *Id.* There, the Court found that because the claim "was adjudicated on March 6, 2024, and therefore *was not still pending* on June 22, 2024, the terms of SSR 24-2p do not apply in this case." (*Id.* at \*14 (emphasis added)). I see no reason to apply a different interpretation of "pending" to this case. Accordingly, I cannot recommend remand on this basis.

19

## VII.    Recommendation

Because the ALJ applied proper legal standards and reached a decision supported by substantial evidence, I recommend that the Commissioner's final decision denying Shirey's application for DIB be affirmed.

Dated: March 12, 2026

Reuben J. Sheperd
United States Magistrate Judge

_____

**OBJECTIONS**

**Objections, Review, and Appeal**

Within 14 days after being served with a copy of this report and recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the magistrate judge. Rule 72(b)(2), Federal Rules of Civil Procedure; *see also* 28 U.S.C 636(b)(1); Local Rule 72.3(b). Properly asserted objections shall be reviewed de novo by the assigned district judge.

*** 

Failure to file objection within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendations. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; "a general objection has the same effect as would a failure to object." *Howard*

20

*v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act." *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, 2 (W.D. Ky. June 15, 2018) quoting *Howard*. The failure to assert specific objections may in rare cases be excused in the interests of justice. *See United States v. Wandashega,* 924 F.3d 868, 878-79 (6th Cir. 2019).

21